[Cite as *State v. Marsh*, 2013-Ohio-757.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | ) | CASE NO.    12 MA 40 |
| | ) | |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| VS. | ) | O P I N I O N |
| | ) | |
| MICHAEL MARSH, | ) | |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |

CHARACTER OF PROCEEDINGS:  Criminal Appeal from Common Pleas Court, Case No. 11CR1333.

JUDGMENT:  Affirmed.

APPEARANCES:
For Plaintiff-Appellee:

Attorney Paul Gains
Prosecuting Attorney
Attorney Ralph Rivera
Assistant Prosecuting Attorney
21 West Boardman Street, 6th Floor
Youngstown, Ohio  44503

For Defendant-Appellant:

Attorney Jay Blackstone
P.O. Box 3412
Youngstown, Ohio  44513

JUDGES:
Hon. Joseph J. Vukovich
Hon. Gene Donofrio
Hon. Cheryl L. Waite

Dated:  March 1, 2013

VUKOVICH, J.

{¶1} Defendant-appellant Michael Marsh appeals from his robbery conviction entered in the Mahoning County Common Pleas Court. Multiple times prior to trial, the state offered to recommend two years in prison if appellant pled guilty to the charged robbery. Appellant rejected the plea, was convicted as charged by a jury, and was sentenced by the court to six years in prison. Appellant urges that defense counsel rendered ineffective assistance of counsel at the plea bargaining stage by advising him that the case was "possibly winnable." For the following reasons, the judgment of the trial court is affirmed.

STATEMENT OF THE CASE

{¶2} On December 3, 2011, appellant shoplifted from Walmart in Austintown. In the process of apprehending appellant, Walmart's asset protection associate got scratched on the hand. Appellant was indicted for robbery, in violation of R.C. 2911.02(A)(2), which provides, "No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall * ** Inflict, attempt to inflict, or threaten to inflict physical harm on another." The offense was a second degree felony, which carries a sentence of two, three, four, five, six, seven, or eight years. R.C. 2911.02(B); R.C. 2929.14(A)(2).

{¶3} Pretrials were held on January 13 and February 22, 2012. At both pretrials and for a third time just minutes before jury selection, the state offered the same plea deal: plead guilty as charged, and the state would recommend a minimum sentence of two years. (Tr. 8). The defendant rejected the plea deal each time. When the state placed this offer on the record, appellant's court-appointed defense counsel noted that he reviewed the matter with appellant, but appellant wished to proceed to trial. Defense counsel also disclosed that he showed the jury instructions to appellant. (Tr. 9). Notably, the jury instructions explained, in accordance with R.C. 2901.01(A)(3), that the physical harm inflicted or attempted in a robbery includes any injury regardless of its gravity or duration. (Tr. 316).

{¶4} The trial court ensured appellant was aware of the terms of the plea offer and that it was appellant's desire to reject the proposal. (Tr. 9). Counsel then

argued two motions in limine that he had filed two days prior. One motion asked to exclude appellant's prior convictions from evidence if he chose to testify. It was revealed that within the past ten years, appellant had prior felony convictions involving drug trafficking, carrying a concealed weapon, and illegal processing of drug documents. He also had a number of misdemeanor theft convictions and a falsification conviction. (Tr. 10, 13). The court ruled that the state could question appellant about his prior convictions if appellant took the stand. (Tr. 18).

{¶5} Before calling the potential jurors down, the court stated to defense counsel, "I would suggest you have some more discussion with your client." (Tr. 28). After a brief recess, defense counsel advised the court that his client had requested new counsel. The court voiced that trial was scheduled to start. The court also said that it was aware of the work defense counsel had performed for the defendant and praised the plea proposal obtained for the defendant. (Tr. 28).

{¶6} The defendant stated that he had been trying to avoid seeking new counsel, that he had wanted to give counsel a chance, but he had a few reasons for wanting to terminate counsel. First, he claimed that counsel called his friend and asked if the friend would be picking appellant up for court; as appellant was in jail, appellant opined that the call to his friend made no sense. In addition, appellant said, "yesterday he spoke to me in confidence and he really convinced me that he was going to work hard on my case and try to win my case and he made me believe that he believed he was going to win the case. All of a sudden, I'm hearing a different story now. He was supposed to contact somebody to work on the case. Three strikes." (Tr. 29). Appellant said that if the court granted new counsel, he had a friend who would "possibly" retain an attorney for him if he wrote to him. (Tr. 30).

{¶7} Defense counsel responded to each claim. First, he stated that he did not call appellant's friend about picking appellant up as he knew appellant had been in jail since his arrest. He explained that a friend of appellant's said that he would be providing clothes to appellant to wear in court, but since that never happened, defense counsel had to provide the clothing for appellant. With regards to appellant's comment about working hard on the case, counsel stated that he told appellant, "if it

goes to a jury trial, I'll give it my best." (Tr. 30). Counsel then noted that part of being a defense attorney is to make sure the client very clearly understands the risks involved. (Tr. 30-31). Counsel stated that he explained the risks to appellant. (Tr. 31). As for the third comment, counsel explained that appellant wanted his friend to enlarge the footage from the surveillance camera. Counsel called the friend, but the friend said that his camcorder could only enlarge footage that he shot with the camera and not someone else's footage. (Tr. 31).

{¶8} The court denied appellant's motion for new counsel, voicing that defense counsel "is a very, very competent lawyer." The court stated that in reviewing the file, the motions filed, and the arguments heard, it was obvious that defense counsel did his job. The court opined that since appellant had been to prison more than once in the past, appellant was lucky to have been offered a plea wherein the state recommended a minimum sentence. "That certainly doesn't speak of somebody -- of a lawyer that didn't do his job. If anything, you should be complimenting him for getting that proposal." (Tr. 32). The defendant then opined that the plea was obtained because the evidence was weak, voicing disbelief that many people go to prison for the crime he committed. (Tr. 32).

{¶9} The case was then tried to a jury. The state presented the testimony of Walmart's asset protection associate (hereinafter "the employee"), an assistant manager at Walmart, and the responding police officer. The employee testified that he was patrolling the store in plainclothes when he saw appellant, who was not permitted to be in the store, opening merchandise containing a box cutter. (Tr. 201-203). Appellant loaded a blade into the cutter and put it in his pocket. (Tr. 202). He then went to another section of the store and stuffed three rain parkas and two ponchos into his jacket and pants. (Tr. 202, 212).

{¶10} The employee had already pointed appellant out to his manager, who then took up a post at the front door of the store. (Tr. 202-203, 238). When appellant began to exit the store with the merchandise, the manager told appellant that he wanted to ask him some questions. (Tr. 205, 238). Appellant started to flee. The manager tried to grab appellant's arm, but appellant was able to bat his arm

away. (Tr. 205). The employee than grabbed appellant in a bear hug in order to keep him upright and held him against a wall for one minute. (Tr. 206, 221, 223). The employee testified that appellant struggled with him. He said that appellant scratched his hand in trying to pry it from his shoulders. (Tr. 206). Appellant then stopped resisting and walked to the office to await the police.

{¶11} A photograph of the employee's red and flushed face was introduced to emphasize that a struggle took place as opposed to appellant peacefully surrendering. State's Exhibit 1. Other photographs were introduced showing the bleeding scratches on the employee's hand. State's Exhibit 2 and 3. The employee testified that he still had scars on his hand from the scratches. (Tr. 212). The manager and the police officer confirmed that the employee's hand was scratched and that he was bleeding. (Tr. 242, 261). The manager also confirmed that appellant initially resisted and tried to get the employee's hands off of him. It was elicited, however, that the manager did not actually see the scratching occur, and he conceded that it was possible that the employee's hand got scratched when he pushed appellant into the wall. (Tr. 238, 247, 250). The police officer testified that he found the box cutter when he searched appellant's pocket and that appellant was belligerent. (Tr. 255-26).

{¶12} The defense played the video footage from the surveillance camera, which was shot from fairly far away. The defendant then decided to testify. Defense counsel disclosed that this was against his advice and that appellant was very insistent about testifying. He explained to the defendant that his prior convictions would be used against him. (Tr. 268). The defendant then testified about the three prior felonies and the five or six other theft convictions. (Tr. 271). The defendant revealed that he pled guilty in every case and that he did not take these cases to trial because he was not going to lie. (Tr. 271-272). He also testified that he has a drug problem.

{¶13} The defendant's version of the events is that he remained calm and did not struggle when the employee grabbed him and their momentum slammed them into the wall. (Tr. 275). He denied that he scratched the employee's hand,

explaining that his arms were being held. (Tr. 278). In opening and closing, counsel pointed out that if you tackle someone against a wall with your hands around their shoulders, you are going to get scraped. (Tr. 195, 302).

{¶14} The jury deliberated for 38 minutes and returned a guilty verdict. On March 6, 2010, trial court sentenced appellant to six years in prison. Appellant filed a timely notice of appeal.

ASSIGNMENT OF ERROR

{¶15} Appellant's sole assignment of error provides:

{¶16} "Appellant's right to counsel under the Sixth Amendment to the U.S. Constitution was violated as a result of the ineffective assistance of his counsel, which caused the Appellant to reject a favorable plea bargain offered by the prosecution, thereby resulting in a guilty verdict and sentence to a term of years much longer than was offered by the prosecution."

{¶17} Appellant states that the evidence against him was overwhelming and incontrovertible and thus it was deficient performance for counsel to advise appellant that the case was "possibly winnable." He urges that outcome determinative prejudice existed because he would have accepted the plea with the recommendation of a two-year sentence if counsel would not have erroneously caused appellant to believe that they could win at trial. Appellant posits that a new United States Supreme Court case is dispositive of this issue, *Lafler v. Cooper*, 132 S.Ct. 1376, 182 L.Ed. 398 (2012).

{¶18} The state responds that the record does not support appellant's contentions. The state posits that *Lafler* is distinguishable. The state alternatively states that even if counsel made such a statement and even if it constituted deficient performance, there was no prejudice because the trial court was free to reject the state's recommendation. Appellant replies that the latter contention is contrary to *Lafler.*

{¶19} In *Lafler*, a favorable plea offer was reported to the client and rejected on the advice of counsel, who advised the defendant that the state could not prove intent because the victim was shot below the waist, even though the defendant shot

the victim three times and missed her head once. The defendant took the case to trial and was convicted, after which he received a sentence more than three times higher than the plea offer. Notably, in an earlier communication with the trial court, the defendant had admitted guilt and expressed a willingness to accept the plea offer.

**{¶20}** In a post-conviction hearing before the state trial court, the defendant argued that his counsel's advice constituted ineffective assistance of counsel. The state court rejected his claim. The federal district court then granted the defendant habeas relief and ordered specific performance of the plea agreement. The Sixth Circuit affirmed, finding that counsel provided deficient performance by informing his client of an incorrect legal rule and finding that the defendant suffered prejudice because he lost an opportunity to plead guilty and receive the lower sentence offered.

**{¶21}** The Supreme Court began by emphasizing that the Sixth Amendment right to counsel extends to the plea bargaining process. *Id.* at 1384. If a plea bargain is offered, the defendant has the right to effective assistance of counsel in considering whether to accept it. *Id.* at 1387. Thus, the two-part *Strickland* test applies, requiring a showing of deficient performance and prejudice. *Id.* at 384-138, citing *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 203 (1985).

**{¶22}** The defendant must show that but for the ineffective advice of counsel, there is a reasonable probability that the plea offer would have been presented to the court, that the court would have accepted its terms, and that the conviction or sentence imposed would have been less severe than that actually imposed upon the defendant. *Id.* at 1385. The Court agreed with the defendant and rejected the state's position that there is no prejudice if the defendant is later convicted after a fair trial. *Id.*

**{¶23}** The Court did not, however, agree with the specific performance remedy imposed by the lower court. The Court stated that if the rejection of the plea resulted in a greater sentence, the trial court should conduct an evidentiary hearing

to determine if the defendant showed a reasonable probability that but for counsel's deficient advice, he would have accepted the plea. If the showing is made, the court can exercise its discretion to determine if the defendant should receive the sentence offered in the plea, the sentence he received after trial, or something in between. *Id.* at 1389. If the plea dealt with convictions on lesser offenses, then resentencing alone may not address the injury, in which case the remedy is for the prosecution to reoffer the plea and the judge to then exercise his discretion in deciding whether to vacate the conviction from trial and accept the plea or leave the conviction undisturbed. *Id.* at 1389, 1391.[1]

**{¶24}** However, as the state points out, counsel's deficient performance was stipulated in *Lafler*. *Id.* at 1383, 1391. The issue of deficient performance was not before the Court and was specifically not addressed. *Id.* at 1384, 1391. In fact, the Court declared, "an erroneous strategic prediction about the outcome of a trial is not necessarily deficient performance." *Id.* at 1391. Here, there is no stipulation that defense counsel said the case was "possibly winnable" as appellant now claims, and there is no stipulation that such a statement would constitute deficient performance. In fact, it is undisputed that appellant received correct legal advice in the form of the jury instructions further discussed infra. Thus, *Lafler* is in fact distinguishable from the case before us.

**{¶25}** *Lafler* is also distinguishable as it arose from a post-conviction proceeding where the defendant stated that he would have pled guilty but for counsel's advice. To the contrary, the case before us arose from the direct appeal after trial where the record does not show that the defendant would have pled guilty but for counsel's advice. In fact, the record shows appellant again rejecting the plea even after he claimed that counsel was no longer confident that they could win.

---

[1]Appellant's brief seems to suggest that the second remedy would apply here. *See* Appellant's Brief at 11, citing *Lafler* at 1391. However, the plea offer appellant rejected called for him to plead guilty to the same robbery that he was eventually convicted of. His only allegation of prejudice here could be the greater sentence. Thus, it is the first remedy that would be applicable herein *if we were to get that far*.

**{¶26}** Specifically, appellant claimed to the trial court on the record prior to trial that counsel previously made him believe that they could win the case but that counsel was now telling him "a different story." Defense counsel clarified that he told appellant he would give his best if the case went to trial and insisted that he advised appellant of the risks of trial. Counsel placed on the record the fact that he showed appellant the jury instructions, which provided that robbery is established by the infliction or attempted infliction of any physical harm in fleeing a theft no matter how insignificant of an injury. Counsel stated that even after showing these instructions to appellant, appellant wished to proceed.

**{¶27}** It was clear from the record that counsel thoroughly investigated the case. He filed motions in limine that discussed details of the case, he called appellant's friend to request technical assistance on appellant's behalf, and it was defense counsel who provided the state with the store's video footage. After three rejections of the plea, the trial court had counsel discuss the offer further with appellant, clearly implying that appellant would be wise to accept the plea. Counsel tried to convince appellant, but this merely resulted in appellant seeking new counsel. The trial court heard all of appellant's complaints about counsel, heard counsel's responses, and did not find appellant's contentions to hold weight.

**{¶28}** Even if counsel did tell appellant the case was "possibly winnable," this would not constitute deficient performance. Such a statement is not equivalent to definitely winnable or even likely winnable. As counsel urged at trial, if a security guard decides to tackle a shoplifter against a wall and his hands get scratched against the wall, a jury may be convinced that it was not the defendant who inflicted the physical harm. That is, the jury could have been convinced that appellant did not struggle and that the employee's hand scratch was not inflicted by appellant but resulted from the momentum of slamming a person's back into a cement wall while holding that person's shoulders. And, "an erroneous strategic prediction about the outcome of a trial is not necessarily deficient performance." *Id.* at 1391.

**{¶29}** In any event, appellant was advised prior to trial that his case was not strong and that acceptance of the plea was advisable. Appellant essentially admitted

on the record that counsel recently advised him that a trial was not likely to end well. The plea offer still existed at that time. The trial court advised him how favorable the plea was under the circumstances of the case. Even after all of this, appellant still rejected the plea, insisted that the proof against him was weak, and even testified that the employee looked "high" in the photograph (which the state introduced to show the employee's face after the struggle). Thus, he cannot say that he would have accepted the deal if counsel had not allegedly stated at one time that the case was possibly winnable. In accordance, this assignment of error is overruled.

{¶30} For the foregoing reasons, the judgment of the trial court is affirmed.

Donofrio, J., concurs.
Waite, J., concurs.